IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOSHUA P. BRAITHWAITE,

                Plaintiff,                  OPINION AND ORDER

    v.

                                                  24-cv-15-wmc

BEN TIERNEY, WYATT WEADGE,
MATTHEW MUTIVA, JACOB STRONG
and CHAD WINGER,

                Defendants.

---

      Representing himself, state prisoner Joshua Braithwaite claims that several members of the security staff at Wisconsin Secure Program Facility ("WSPF") failed to take reasonable steps to prevent his self-harm during separate incidents on January 16 and January 21, 2021. Braithwaite was granted leave to proceed on those claims under the Eighth Amendment to the United States Constitution and Wisconsin common law. Defendants have since filed a motion for summary judgment, arguing initially that all of plaintiff's claims lack merit. (Dkt. #26.) However, defendants later partially withdrew their motion as to plaintiff's claims against defendants Wyatt Weadge, Jacob Strong and Ben Tierney arising out of the January 21 incident, (dkt. #42, at 1–2), while still seeking summary judgment as to plaintiff's claims against defendant Tierney arising out of the January 16 incident, as well as all of plaintiff's claims against defendants Matthew Mutiva and Chad Winger. For the reasons set forth below, the court agrees with defendants that plaintiff cannot succeed on those claims, so defendants' motion will be granted with respect to Tierney's alleged involvement in the January 16 incident and plaintiff's claims against Mutiva and Winger more generally.

UNDISPUTED FACTS[1]

Plaintiff Joshua Braithwaite is a prisoner at Columbia Correctional Institution, but at the times relevant to this case, he was incarcerated in the restrictive housing unit at WSPF. The named defendants also all worked as WSPF security staff during the relevant times.

### A. January 16 incident

According to Braithwaite, on January 16, 2021, at approximately 9:35 p.m., he pushed his emergency intercom button, then told Sergeant Tierney that he was stressed out and was "going to kill myself before y'all kill me." At the time, Braithwaite was in the restrictive housing unit, but had been asking to be placed on observation status for several days. Tierney responded by telling Braithwaite to "think about getting out of the hole."[2]

Braithwaite next used a pen to cut his forearm, pushed the emergency intercom, and told Tierney he needed medical help. Several security officials responded, including Sergeant Carly Knockel, Sergeant Lonnie Friederick, Sergeant Matthew Mutiva, Lieutenant Scullion, Corrections Officer Leinen, Sergeant Oswald, and Corrections Officer Benish. Braithwaite was then transported to the hospital for treatment.

### B. January 21 incident

On January 21, 2021, Braithwaite again cut himself with a pen. According to Braithwaite, defendants Tierney, Strong and Weadge watched him cutting himself for 30

---

[1] Unless otherwise indicated, the following facts are undisputed and drawn from the parties' proposed findings of facts and responses, from the undisputed record evidence where appropriate.

[2] Tierney denies that this exchange took place and denies Braithwaite ever stated that he was going to kill himself, but the court accepts plaintiff's version of events for purposes of summary judgment.

minutes to an hour, but did nothing to stop him.³ At approximately 12:30 a.m., Braithwaite used his emergency intercom to call Sergeant Tierney and report that he was bleeding. Tierney immediately notified security response officials.

Within minutes, several officers, including Corrections Officer Strong, Sergeant Saylor, Sergeant Knockel, Corrections Officer Weadge, and Captain Hulce responded to the Braithwaite's cell. Staff then transported Braithwaite to a hospital for treatment.

## OPINION

Plaintiff was granted leave to proceed on two claims under the Eighth Amendment and state law. First, on January 16, 2021, defendant Tierney failed to intervene when plaintiff stated he was going to harm himself. Second, on January 21, 2021, defendants Winger, Mutiva, Weadge, Strong and Tierney failed to intervene to either prevent plaintiff from cutting himself or stop him once he had started. Defendants move for summary judgment on plaintiff's claim against Tierney based on the January 16 incident and plaintiff's claims against Mutiva and Winger more generally.

Summary judgment is appropriate if the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the moving party meets this burden, then the non-moving party must provide evidence "on which the jury could reasonably find for the nonmoving party" to survive summary judgment. *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406-07 (7th Cir. 2009). At summary judgment, the court views disputed facts in a light most favorable to the

---

³ Again, defendants deny that they saw Braithwaite cutting himself, but the court must assume otherwise in adopting plaintiff's version of events at summary judgment.

3

plaintiff, as the nonmoving party, and construes all reasonable inferences from the evidence in his favor, *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017), but a nonmovant is only entitled to favorable inferences that are supported by admissible evidence, not those based upon mere speculation or conjecture, *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017), or "[c]onclusory statements, not grounded in specific facts," *Bordelon v. Bd. of Educ. of the City of Chicago*, 811 F.3d 984, 989 (7th Cir. 2016).

Prison officials violate the Eighth Amendment if they are aware of an objectively serious risk of harm to an inmate *and* knowingly or recklessly disregard it. *Farmer v. Brennan*, 511 U.S. 825, 846 (1994). To prevail on his Eighth Amendment claims, therefore, plaintiff must prove that: (1) defendants knew of a strong likelihood that plaintiff would seriously harm himself; (2) defendants consciously failed to take reasonable measures to prevent the harm; and (3) defendants' action or inaction caused plaintiff harm. *Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020); *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 669 (7th Cir. 2012). In contrast, under Wisconsin common law, a claim for negligence requires: (1) a breach of (2) a duty owed (3) that results in (4) harm to the plaintiff. *Paul v. Skemp*, 2001 WI 42, ¶ 17, 242 Wis. 2d 507, 625 N.W.2d 860 (2001).

Turning first to plaintiff's claims against defendants Mutiva and Winger, the court agrees that plaintiff has provided no evidence to support his Eighth Amendment or negligence claims against them. While plaintiff was granted leave to proceed on claims against those two defendants relating to the January 21 incident, plaintiff fails to assert in either his declaration and proposed findings of fact that either of those defendants observed him cutting himself or were otherwise involved in that incident. Rather, his only proposed facts involving Mutiva and Winger are about their alleged refusal to place him on observation status. However, for reasons

4

explained in the screening order, plaintiff was not permitted to proceed on claims based on the security staff's alleged refusal to place him in observation. (Dkt. #14, at 4–5.) Therefore, summary judgment will be granted on plaintiff's claims against Mutiva and Winger.

The record presents a closer question as to whether summary judgment should be granted to defendant Tierney on plaintiff's claims based on the January 16 incident. Specifically, defendants argue plaintiff's lone statement, that "I'm going to kill myself before y'all kill me" is by itself insufficient to put Tierney on notice that plaintiff faced a substantial risk of self-harm under the Eighth Amendment. Under current Seventh Circuit precedent, the court agrees with defendants. Specifically, the Seventh Circuit has held that prison staff are "neither required nor expected to believe everything inmates tell them," *Olson v. Morgan*, 750 F.3d 708, 713 (7th Cir. 2014), and prison staff "who reasonably disbelieves a prisoner's assertion is not liable just because it turns out to have been true." *Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018); *see also Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020) (ignoring "an insincere suicide threat from an inmate wanting nothing more than attention" does not confer liability under the Eighth Amendment); *Szopinski v. Koontz*, 832 F. App'x 449, 451 (7th Cir. 2020) (defendants not liable under Eighth Amendment for failing to prevent inmate from harming himself where they had no "reason to believe that his threats to harm himself were genuine, rather than a manipulative ploy to get placed under observation").

Thus, to trigger the Eighth Amendment, an inmate's indication of self-harm must be both credible and imminent. For example, in *Johnson v. Garant*, 786 F. App'x 609, 610 (7th Cir. 2019), the Seventh Circuit held that "a reasonable jury could not find that the defendants knew of a substantial risk of suicide based only on Johnson's statements that he felt suicidal and wanted to speak to a crisis counselor." The court explained that prison staff would not

necessarily have known based on those statements alone that the prisoner had the means to imminently harm himself; thus, to implicate the Eighth Amendment, a prisoner must do "more than tell guards that he planned to commit suicide." *Id.; see also Wright v. Funk*, 853 F. App'x 22, 24 (7th Cir. 2021) ("[N]o reasonable jury could find that [prison staff] knew of a substantial risk of suicide based on [prisoner's] statements that he was having suicidal thoughts and would like to speak with someone from the psychological services unit."); *Szopinski v. Walker*, No. 20-CV-1044-JDP, 2022 WL 2046209, at *3 (W.D. Wis. June 7, 2022) (defendants not liable under Eighth Amendment for disregarding substantial threat of harm by failing to intervene when prisoner stated "he needed to go on observation status and that he would swallow his glasses if returned to his cell"); *Williams v. Stacy*, No. 18-C-1426, 2020 WL 6136148, at *2 (E.D. Wis. Oct. 19, 2020) (prisoner's statement that "he was having suicidal thoughts" was insufficient to put prison officials on notice of a substantial risk of suicide).

Here, plaintiff states only that he told Tierney he was going to kill himself before prison staff killed him. He did not identify any means by which he would harm himself; nor did he state that his suicide plans were imminent. At least as of January 16, 2021, plaintiff's statement was also an isolated one. Indeed, plaintiff does *not* represent that he made any other statements to Tierney that day regarding his intent to harm himself. Finally, plaintiff submitted *no* evidence that Tierney had any prior knowledge of plaintiff's mental illness or self-harm attempts, such that he should have believed plaintiff's threats were genuine, rather than an attempt to gain attention or be placed on observation status.

As a result, defendant Tierney is also entitled to summary judgment on plaintiff's Eighth Amendment claim. However, defendants made no arguments about plaintiff's negligence claim against Tierney based on the January 16 incident, so plaintiff will proceed to trial on that claim,

6

in addition to his claims against defendants Weadge, Strong and Tierney based on the January 21 incident.

ORDER

IT IS ORDERED that defendants' motion for summary judgment (dkt. #32) is GRANTED as to plaintiff's Eighth Amendment claims against defendant Ben Tierney arising out of the January 16, 2021 incident, and all of plaintiff's Eighth Amendment and Wisconsin common law claims against defendants Matthew Mutiva and Chad Winger. The motion is DENIED in all other respects.

Entered this 4th day of March, 2026.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge